[No. B161964. Second Dist., Div. Three. May 25, 2004.]

ALEX ABASSI et al., Cross-complainants and Appellants,
v.
DALE A. WELKE, Cross-defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of sections III.B., III.C., and III.D.

COUNSEL

Aguilar & Sebastinelli, Raul V. Aguilar, Allen J. Kent and Timothy M. Ness for Cross-complainants and Appellants.

Lewis Brisbois Bisgaard & Smith, Jana I. Lubert and Jessica A. Fortner for Cross-defendant and Respondent.

OPINION

ALDRICH, J.—

I.

INTRODUCTION

In this case we are called upon to resolve the issue of whether the trial court may sua sponte entertain a second summary judgment motion following its denial of a previous summary judgment motion notwithstanding subdivision (e) of Code of Civil Procedure section 1008. Finding that the court's consideration of such a motion involves a core judicial function and fosters the fair and efficient administration of justice, we hold that the court has jurisdiction to entertain and rule on a second summary judgment motion.

Physicians and surgeons may, pursuant to Insurance Code section 1280.7, become members of an interindemnity arrangement that creates a trust fund funded by member contributions. The income from the trust fund and assessments of the members are used to cover malpractice lawsuits.

Appellants are hundreds of the doctors who formed Physicians Interindemnity Cooperative Corporation (PICC) and Physicians Interindemnity Trust (PIT), collectively PIT/PICC, pursuant to Insurance Code section 1280.7.[1]

The matter before us involves a cross-complaint brought by appellants against respondent Dale A. Welke (Welke). Welke was the attorney primarily responsible for the legal affairs of PIT/PICC. The trial court granted summary judgment in favor of Welke.

In the published portions of this opinion (parts I., II., III.A., and IV.) we hold that the trial court had the authority to entertain and rule upon the summary judgment motion even though it was the second such motion. In the

---

[1] Appellants appear as certain defendants, cross-complainants, and cross-defendants.

unpublished portions of this opinion (parts III.B., III.C., and III.D.) we hold that the trial court did not err in granting the motion. We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Preliminary Facts.*[2]

PICC, an interindemnity cooperative corporation, was formed to provide members protection from medical malpractice claims. Pursuant to the members' agreement, PIT was formed. PIT was an unincorporated interindemnity arrangement. Funds deposited into the PIT fund were expected to be used to cover the defense of, indemnity for, medical malpractice lawsuits for member doctors.

In September 1995, the PIT/PICC boards concluded that PIT/PICC faced unbearable exposure to future defense and liability claims. It was announced that the entities would be wound down and there would be a multimillion-dollar assessment against the member doctors. The majority of the member doctors refused to pay the assessment. PIT ceased providing malpractice coverage. It was arranged that the member doctors could obtain insurance from Norcal Mutual Insurance Company (Norcal) or could obtain insurance from a carrier of their choosing.

In 1996, as a result of an action brought by the Department of Corporations, the trial court ordered PIT/PICC into receivership. David A. Gill (Gill) was appointed receiver. Gill discovered that there was only $50,000 in the trust, which Gill deemed insufficient to pay debts and to defend against, and indemnify for, malpractice claims. Gill borrowed money and assessed the member doctors to pay expenses and liabilities, including malpractice claims.

During the relevant period of time, the law firm of Adams, Duque & Hazeltine (Adams Duque) was legal counsel for PIT/PICC. Welke was the Adams Duque partner primarily responsible for handling the PIT/PICC legal affairs. Adams Duque submitted invoices for the services rendered by Welke and was paid for these services.[3]

---

[2] Because this matter comes to us upon the granting of a summary judgment motion, we construe any disputed facts in favor of appellants, the parties who opposed the motion. (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836 [20 Cal.Rptr.2d 913]; *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540].)

[3] The cross-complaint also named Adams Duque and other lawyers from that firm. After Adams Duque filed for bankruptcy, all former Adams Duque partners initially named in the cross-complaint were dismissed, with the exception of Welke.

## B. *Procedure.*

Gill brought two lawsuits.

The first lawsuit was against the PIT/PICC trustees, *Gill v. InterMed., etc., et al.* (Super. Ct. L.A. County, No. BC149270). Eventually this lawsuit was resolved through settlement.

Our discussion focuses on the second lawsuit, *Gill v. Abbassi et al.* (Super. Ct. L.A. County, No. BC174420). It was filed by Gill against many member doctors, including appellants. It sought to recover millions of dollars, including receivership expenses, and funds owed by the member doctors for unpaid assessments.

Gill did not file suit against Welke. Rather, appellants brought Welke into the litigation by a cross-complaint. As amended, the cross-complaint alleged six causes of action against Welke, causes of action 9 through 14. These causes of action sought indemnity, declaratory relief, and damages.

In essence, appellants' cross-complaint against Welke alleged the following. Welke and Adams Duque drafted, prepared, and reviewed all pertinent documents relating to PIT/PICC, including the PIT agreement and the Norcal agreement. Welke and Adams Duque advised the PIT/PICC directors about these documents and the operation of PIT/PICC. Welke and Adams Duque knew the PIT/PICC directors would rely upon their advice. The attorneys induced and caused the PIT/PICC trustees to knowingly breach their fiduciary duties by depleting the corpus of the reserve trust fund of the PIT trust. The cross-complaint sought recovery of all sums the member doctors might incur by way of settlement or judgment and sought declarations of rights.[4]

*Gill v. Abbassi* was a complex case involving hundreds of member doctors and numerous cross-complaints, including the one filed against Welke. At each stage of the proceedings, parties and issues were eliminated in different ways.[5]

---

Welke withdrew from Adams Duque effective February 1, 1996, and joined Kopesky and Welke, LLP. Thereafter, Welke's new firm was partially paid for services Welke rendered to PIT and to Gill.

[4] The cross-complaint filed against Welke also was brought against the trustees of PIT/PICC. According to appellants, this aspect of the litigation was eventually tried by the member doctors who were still alive, not bankrupt, and who had not settled with Gill. On July 21, 2003, a jury rendered a special verdict finding that the trustees committed breaches of fiduciary duties. A multimillion-dollar judgment was entered on August 7, 2003, against the trustees.

Additionally, a class action lawsuit was filed against Norcal, *Reiss et al. v. Norcal,* (Super. Ct. L.A. County, No. BC178413) consolidated with case No. BC190516. On December 16, 2002, a jury rendered a verdict exceeding $190 million in favor of appellants against Norcal.

[5] *Stoops v. Abbassi* (2002) 100 Cal.App.4th 644 [122 Cal.Rptr.2d 747] dealt with another aspect of this complex case. *Stoops* discusses in more detail Insurance Code section 1280.7 and the agreements that formed PIT/PICC.

In July 2000, Welke brought a summary judgment motion with regard to the cross-complaint filed against him by appellants. The motion was heard and denied by the Honorable Carolyn B. Kuhl.

Over the course of two years, many issues were resolved and numerous parties eliminated from the case. Trial was approaching. On February 22, 2002, the parties appeared before Judge Kuhl for a status conference. Six attorneys were present representing appellants, Gill, the PIT/PICC trustees, Welke, and an individual defendant. A member doctor also appeared in propria persona. With the goal of expediting the case in an orderly fashion, Judge Kuhl examined how the matter should proceed. Welke's counsel suggested that a summary judgment motion might dispose of appellants' cross-complaint. Appellants' counsel stated that Welke had already brought such a motion, and that his clients would not stipulate to reopen. The court invited a second summary judgment motion.

On March 15, 2002, Welke filed a second motion for summary judgment.

In opposing the summary judgment motion, appellants contended it was undisputed that "PIT . . . was a trust in every formal sense of the word. Its whole purpose was to function as a trust." Appellants further contended that they were beneficiaries of the trust, Welke owed a duty to them, and Welke breached his fiduciary duties to them. Appellants attached the deposition testimony of an expert, Phillip Feldman (Feldman). Feldman opined that Welke's conduct fell below the standard of care for attorneys. Appellants also argued that Welke was foreclosed from bringing the motion as it was an improper motion for reconsideration.

Judge Kuhl heard the second summary judgment motion on May 1, 2002, and granted it on June 27, 2002. Judge Kuhl ruled, in part: (1) the trial court had the discretion to consider successive motions that offered different or additional facts, and judicial economy strongly favored permitting the trial court to hear this second motion if it would resolve the case short of a lengthy trial; and (2) appellants were beneficiaries of the trust created by the PIT/PICC interindemnity arrangement, and appellants only had standing to bring an action against Welke based on active participation by him in the PIT/PICC trustees' breach of duty. The burden had shifted to appellants to show that Welke actively had participated in a breach of trust, and appellants could not meet this burden. In rendering the latter ruling, Judge Kuhl found that much of the expert evidence submitted by Feldman was not admissible. Judgment in favor of Welke was entered, from which appellants appeal.

## III.

## DISCUSSION

A. *The trial court could entertain and rule upon the second summary judgment motion.*

Citing Code of Civil Procedure section 1008, appellants contend the trial court erroneously entertained and ruled upon Welke's second summary judgment motion. Appellants base this contention on the fact that the trial court had previously denied a summary judgment motion filed by Welke. This contention is not persuasive.

■ Code of Civil Procedure section 1008 addresses motions for reconsideration and renewal motions. (Code Civ. Proc., § 1008, subds. (a), (b).) Reconsideration and renewal motions brought pursuant to section 1008 require the moving party to present new and different facts from that presented in the first motion.

■ Subdivision (e) of Code of Civil Procedure section 1008, provides that the section "specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions." In *Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172 [121 Cal.Rptr.2d 405], we held that this language did not restrict a trial court from sua sponte reconsidering its own interim orders. Rather, we concluded that trial courts have the inherent authority to review their prior rulings. (*Id.* at pp. 175, 179, 185.)

Our conclusion in *Case v. Lazben Financial Co., supra,* was based upon the separation of powers doctrine that precludes the Legislature from usurping an essential function of the courts. (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at pp. 183–185.) As we stated, "[a]mong the judiciary branch's 'core' or 'essential' functions is the power to resolve specific controversies between parties and declare the law. [Citations.] It is also a core judicial function 'to ensure the orderly and effective administration of justice.' [Citation.]" (*Id.* at p. 184.) To preclude courts from sua sponte reconsideration of their own rulings "would directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice." (*Id.* at p. 185.)

" 'Section 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over. On the other hand, these same judicial resources would be wasted if the court

could not, on its own motion, review and change its interim rulings. [Citation.] Therefore, the only requirement of the court is that it exercise "due consideration" before modifying, amending, or revoking its prior orders.' " (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 181, citing *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1157 [89 Cal.Rptr.2d 676].) Barring trial courts from considering second summary judgment motions when such motions should be granted will result in unnecessary trials, wasting the resources of both the trial courts and the parties.[6]

Here, Welke's motion for summary judgment was denied in 2000. Two years later, after the dust had settled, and many of the issues in this complex case had been resolved, a status conference was held. During this conference, the parties discussed the most efficient manner to proceed. The trial court invited Welke to file a second summary judgment motion indicating it wanted to reassess its prior ruling, which it had the power to do. The parties had an opportunity to brief the issue, and a hearing was held. Thus, due consideration was given. (*Darling, Hall & Rae v. Kritt, supra,* 75 Cal.App.4th 1148.) Even if no new evidence were presented, the trial court was not precluded from entertaining and ruling upon the second summary judgment motion brought by Welke.[7]

---

[6] There is a growing body of case law debating the parameters and limitations of Code of Civil Procedure section 1008 and whether, and under what circumstances, courts have the jurisdiction to entertain and rule upon motions for reconsideration and renewed motions. Much of the discussion centers upon whether the statute impermissibly infringes upon the courts' inherent power to reconsider, modify, amend and revoke interim rulings. *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th 172, *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368 [130 Cal.Rptr.2d 754], and *Scott Co. v. United States Fidelity & Guaranty Ins. Co.* (2003) 107 Cal.App.4th 197 [132 Cal.Rptr.2d 89] have catalogued the varied and conflicting results of the opinions published on this issue. (See also, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2003) ¶ 9:327 et seq., p. 9(I)-106.)

[7] Welke's two summary judgment motions were brought in the alternative, also seeking summary adjudication. Appellants' argument that the trial court could not entertain nor rule upon Welke's second motion was based entirely upon Code of Civil Procedure section 1008. Appellants did not suggest that Code of Civil Procedure section 437c, subdivision (f)(2), a provision in the summary judgment statute, was applicable. Nor did appellants argue that section 437c, subdivision (f)(2) precluded the trial court from acting. In an abundance of caution, we notified the parties that we were considering taking judicial notice of the legislative history of section 437c, subdivision (f)(2) and provided the parties with an opportunity to file letter briefs to discuss the relevance, if any, of this statute and its legislative history. Appellants' untimely letter response asserted section 437c, subdivision (f)(2) precluded Welke's second motion because it did not contain any newly discovered facts.

In their letter brief, appellants do not address our opinion of *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th 172, which is cited by Welke in his brief. Appellants fail to explain why *Case's* reasoning is not applicable to motions brought pursuant to the summary judgment statute, Code of Civil Procedure section 437c. The only reference appellants make to the trial court's inherent power is to *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031 [126 Cal.Rptr.2d

The trial court did not abuse its discretion in entertaining and ruling upon the second summary judgment motion.

B.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.

## DISPOSITION

The judgment is affirmed. Welke is awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.

On June 22, 2004, the opinion was modified to read as printed above.

---

310], an opinion cited by Welke in his letter brief. In their letter brief, appellants simply state, with no further discussion, that *Wozniak* is not applicable because "[a]ny discussion of the inherent power of the court to correct its mistake was limited to [Code of Civil Procedure section] 1008."

*See footnote, *ante*, page 1353.